counties themselves are not entitled to state sovereign immunity. The court did no analysis as to whether the county for its arrest, booking, arraignments, court proceedings, constituted a violation of ADA Title II. ADA Title II states that no qualified individual with a position in the services, programs, and activities of a public entity. It applies to everything that a public entity does. As this court stated in Tennessee v. Lane, access to the courts is a fundamental right, which conferred waiver of sovereign immunity to access to the courts and judicial services. Is this an ongoing issue in this county? No. We have decided not to move forward with injunctive relief, so we're moving forward with our nominal damages and compensatory arrests. Are emotional damages out of the picture now, given the Cummings decision, premier rehab from the Supreme Court? The court did not speak to nominal damages being available. No, but emotional damages, I'm asking. Emotional distress damages are not out of the picture in this case. These are the reasons. If you look at the actual statute of the remedies of 794AA2, not only are the remedies under Title VI, but in 2009, that was amended to include the remedies available under 1981A. And so 1981A expressly states that emotional distress damages, mental anguish, are available to a person aggrieved. 794AA2 says that any person aggrieved under the Rehabilitation Act shall have these two remedies available. This was not considered in Barnes v. Gorman, and this was not considered in Franklin because the statute was amended in 2009. So the spending clause analogy here that is referred to in Barnes v. Gorman actually does not apply because Congress has expressly in the statutory language provided for emotional distress damages for any person aggrieved under 794AA2. Can you give us some idea of what range of damages you're talking about? I mean, at this stage, my client wants a vindication of his rights. Being not able to participate during his court proceedings, during his bookings, during his arrests, to be given fair warning of all the conditions of his probation. These are constitutional rights that are found under the 14th Amendment, and the fact that he wasn't provided a qualified interpreter through his court proceedings implicates rights as to assisting his counsel, the ability to understand his Brady rights. He pleaded guilty in this case, but when you plead guilty, you're informed of your rights and what you're waiving in terms of your constitutional rights. Your right to a trial, your right to be able to confront the witnesses against you, and that couldn't have possibly been communicated to Mr. Luke in this scenario because even though he pleaded guilty, he was not afforded those rights that everyone constitutionally gets. I apologize. I misread my sheet. I didn't mean to call you Mr. McGee. I apologize. Sorry? I misread my sheet here. I mistakenly called you Mr. McGee a while ago. You mentioned the 14th Amendment and the sovereign immunity issue, but I just want to clarify. Do I understand you're not asking us to address those issues here. You're just asking us to address, as to the state, just the merits issue, and then send it back to deal with the sovereign immunity question. Is that right? Yes, correct, Your Honor. Let me ask you, if someone in a wheelchair needs to go to a courthouse, it's not wheelchair accessible, there's no ramp, but they have a strong family member who's able to chair up the steps and they get into the courthouse. Does that person have a claim? Under Tennessee v. Lane, the Supreme Court would say that, yes, that person would have a claim, because in that case, what happened was that person actually was assisted and carried by various friends and family members to get up to the courthouse, and in there, it was seen that that sort of indignity that he experienced, where everyone's looking at him, he has to be carried up the steps, provided unequal treatment and a violation of his rights. So, also, too, the court, and I understand, the court did no analysis as to Lee County, as to their the arrest, the booking, the court proceedings, anything like that. No analysis. The analysis just basically copied that of the state and said, sovereign immunity is applicable to the county. You haven't stated a claim, just like you did to the state defendants, and therefore— It all turned, basically, on this idea, sort of a no harm, no foul idea, right? Right. Because he was able to get probation, he successfully completed it, that there was no denial of his service, right? Right. Which, taking that to its logical conclusion, could result in absurd results. For instance, if someone's completely deaf and is sitting in a criminal trial, and ultimately the jury, and they have to go through a weak trial without an interpreter, and without being able to confront their to exercise their constitutional rights, even if they're found not guilty of that crime, there certainly is a violation of that person's rights to equal access to the courts. So, to say that this, you know, a results-oriented no harm, no foul would be contrary to the intent of Title II and also the Constitution. I take it that's because, notwithstanding the outcome, he literally did not have the same access as everybody else, in terms of the reasonable accommodation. Correct. Correct. But I'm curious about your response to Judge Costa in terms of the person who is able, through family assistance, able to fully participate. I realize that's a different case from your situation, but why do you go that far and say that that, too, is a deprivation? I think there is because, for instance, of using a family member as a sign language interpreter, there's really, that person could be emotionally involved, they're not impartial, there's no evaluation of whether that person has the sufficient requisite skills and abilities to actually competently proceed with the proceedings. Right. So that's a situation where there's a family member providing some assistance, but it's not the same thing. It's not equivalent. I get that. I think Judge Costa's hypothetical was a family member who provided complete assistance, so that there was effectively no difference, effectively no deprivation. How is that still a deprivation? Sure. So... Again, I acknowledge that's not this case. Sure. So it goes back to unequal treatment. And so do non-disabled people have to have their family members carry them up the stairs, or do non-disabled people have to have family members come in in court to provide that sort of assistance, even if it's full and equal access? That unequal treatment that is provided is in itself a harm, because if you look at someone with a disability and non-disability, their experiences are markedly different because they are being forced to rely on their own assistance while others can just participate without that assistance. But we don't have to decide that issue today, do we? You don't. You don't have to decide that issue today. We believe that this should be reversed and remanded to clarify that the ADA is not a results-oriented, no-harm-no-foul type of statute. It's created to provide equal access in that it does apply to all stages of the criminal process, whether it be arrests, it be arraignment, it be trials, it be probation. And in terms of a sovereign immunity issue, that needs to be decided by the court. But I think on its face, it's clear that Lee County does not deserve sovereign immunity, state sovereign immunity, because that's not an instrumentality of the state. I guess aside from that, the last issue is the service issue that the state of Texas was dismissed on. The state secretariat of state was served with the summonsing complaint. It says that under statutes involving personal injury that you are to serve the secretary of state. In other proceedings, court proceedings that we cited, they cited actually cases in which they got cases dismissed under disability discrimination because they did not serve the secretary of state. And so they're taking a contrary position than they've taken in the past. They claim that only the governor himself or his designee can accept service of ADA Title II cases under these circumstances, which we believe is incorrect given the circumstances and given that they've taken contrary positions to get cases dismissed in the past saying that the secretary of state is the proper party. What is suing Texas . . . how does that help you when you sued all these state entities and properly served them? I don't think it adds much, Your Honor. I agree with you. I'm also not sure. I mean, the state of Texas, it's not like the governor is making this decision about these . . . whether there's an interpreter for your client. Correct. I think ultimately it may be found that they're not the proper party, but I just think for the purposes of clarifying the service issue, I do think that that needs to be clarified that secretary of state is a proper . . . is the proper place to serve these types of complaints. And with that, if the court has no further questions, I'll reserve the balance of my time for rebuttal. Thank you, Your Honor. May it please the court, I am Eric McGee and I represent Lee County in this case. Lee County, Texas respectfully requests that the court affirm the district court's order granting Lee County's motion for a judgment on the pleadings. You acknowledge, though, don't you, that . . . I assume you represent the county often. I mean, you acknowledge they're not entitled to Eleventh Amendment immunity, right? Well, if they're performing a local governmental function. And I think when we go here to the specific case of what's before the court today, it was a judgment on the motion on the pleadings, same thing as a 12B6 failure to state a claim. And the only allegations in this case that are specific relate to two individuals that were sued in their official capacity who were dismissed out because it's the same thing as suing the county. They were not performing a local governmental function. They actually were performing a state function. That's Judge Paul Fisher, who's the county judge who oversaw the plea and sentencing of Cameron Luke. And the other individual was the Justice of the Peace, Judge Donata Smith, who was the one that conducted the magistration. And so when we look at the very limited, narrow scope of what we're here for today and how the court typically analyzes motions to dismiss for judgment on the pleadings similar to a 12B6, you have to go to whether there are well-pleaded facts that are . . . what kind of agency or what kind of governmental entity you are. It's about what function you're performing? It can be when it's a state function. So if a state . . . if an admittedly state entity is engaged in what everybody would agree is a local function, whatever that may be, no sovereign immunity? No, because they still are a state entity, but all a county gets its authority from is from the state, from the statutes. It's created by the state. And in this case . . . Okay, but then . . . I mean, you would acknowledge that counties typically do not get sovereign immunity, even though, as you say, they exist based on the state government. So are you . . . is this a . . . this sounds like an argument for the U.S. Supreme Court. I mean, we were already bound . . . Why is this in your brief? That's because it's not . . . I don't believe that issue is even before the court. I believe what the district court . . . You're dismissing on sovereign immunity grounds. Dismiss your client as having sovereign immunity. How's that not before the court? Because he said that the plaintiff states a claim for relief under Title II because he failed to allege a benefit or service or program or an activity that they were denied. I understand that he also says there's no claim, but he also did say it was entitled to . . . your client was entitled to sovereign immunity. And he pretty much said he wasn't going to address that because they didn't state a claim. If you look at Record on Appeal 335, which is the page of his order, it says, Luke cites to no authority and the court finds none, suggesting that a public entity's failure to accommodate an individual with a qualifying disability is itself a Title II harm. So is your position that the district court has not found that the county is entitled to any sort of immunity and therefore we're just here on the merits? That's your position? I think that's what we're here for, just like a 12B6, a 12C motion, based on the pleadings themselves lack sufficient pleadings to show that there was a Title II claim at all. And that's because when you look at each one of . . . I think it's a conclusory fact pattern that he has presented here. He makes wide-sweeping allegations that he did not participate in his investigation, arrest, booking, detainment, arraignment, release, court proceedings, and probation. And he says, I'm deaf and I didn't get an interpreter. How much more specific do you need to be? All the cases are very specific. When you look at the rulings related to them is what was the next step? What was pled next? For example, an individual was involved in an automobile accident. He was deaf. The investigating officer came out there and conducted an investigation concerning the automobile accident. At the automobile accident, he could not participate in the tests that were being provided to him for his field sobriety test. And then he spent three days in jail and was ultimately released. And all of that . . . I mean, his claim is only based on the fact that he was not given an interpreter. What about the other side's hypothetical where there's a trial of a deaf defendant and no interpreter is provided during the week-long trial, but there's an acquittal? Would you say that's a claim for being denied an interpreter? I would have to look at the pleadings of the case to see exactly what was pled. What's that? I mean, these aren't complicated cases. That he didn't participate in his own trial. I didn't know what was going on at my trial. Sure, I won. I got to walk out of the courthouse a free man. But there was no interpreter, so I was denied the right to know what was going on and help my lawyer question witnesses, et cetera. And there are cases that involve that. There are cases where an individual is in a jail, for example, and he tries to call his lawyer. They don't have . . . he's hearing impaired. He doesn't have the ability to utilize the jail services to call his lawyer and participate in defending himself in his case. Ultimately, that case was dismissed. So why isn't it the same here when at his court hearings he wasn't given an interpreter, and even though it worked out where he didn't go to jail or anything, he didn't have a full understanding of what was going on? His original complaint and his First Amendment complaint are completely devoid of any of that. He does not say that he doesn't deny that he was arrested for marijuana possession, that that was incorrect. He doesn't say that he did not participate in any form of the investigation. He does not say that he was denied a service at booking. He didn't understand the services provided to him at booking. He doesn't say that he was denied anything during his detainment. I mean, there's a list of services that the jail provides. Same thing on his arraignment and release. He doesn't say that he was excluded when he signed all the documentation, giving him bail, getting out on a personal recognizance. But he says he wasn't given an interpreter, just like the person at trial who wasn't given an interpreter. But he says he wasn't excluded. He hasn't argued that he was excluded from participating. What does he have to show in your view? I think he has to plead some facts that show that he, and that's the second requirement of a Title II claim, is first that he has a qualifying disability, which we know he's deaf in this case, and two, that he has been being denied the benefits of services, programs, and activities. He makes it very clear in his pleading that he is not challenging or seeking to invalidate his underlying conviction, judgment, or sentence rendered. That's Record on Appeal 56 at paragraph 5. And then he goes on further to say again on Record on Appeal 62 at paragraph 30, to be clear, Mr. Luke does not challenge or seek to invalidate his underlying conviction, judgment, or the sentence rendered. And when you look at the cases that he cites primarily in his brief, every one of those cases there's that next pleading step. It's not that they were denied that. In paragraph 3, Mr. Luke endured protracted humiliation because of defendant's failure to accommodate his deafness. Defendant's actions caused him greater levels of fear, anxiety, indignity, frustration, humiliation, and emotional distress than a hearing person would be expected to experience. It goes on. But each one of those cases after that provides what that humiliation was. It's not some conclusory statement that I was embarrassed. I think he cites a case specifically where a couple was trying to seek treatment over a four-year period, a deaf couple, for their child who had a brain tumor. But would it be enough for a plaintiff to plead that he wanted an interpreter and was denied an interpreter, that he asked for one and it was ignored? I don't think that meets the standard under Title II. What's the difference? I'm not seeing the gap between that and the cases you're conceding would be enough. You have to identify what the benefit, service, program, or activity was. It's not obvious that a deaf person, why they need an interpreter. I'm not following that. He hasn't said that he was excluded from participating in any way, that he was unable to read the documents that he was signing or make any of the arguments to assist himself with his trial. He hasn't identified any benefit, service, or program, other than that he didn't get an interpreter. I want to understand your proposed rule. It's not enough to say that you're deaf and that you're denied an interpreter. You have to specifically allege that by not having an interpreter, I was unable to read, I was unable to see, I was unable to hear. Is that sort of the idea? I was unable to participate. And that's what all the cases show, is that there was some level of something that the person was not able to participate in. The Chisholm case in the Third Circuit was a deaf defendant denied assistance for being deaf. And the Third Circuit said there was a claim, even though those charges were actually quashed. Again, he won. That plaintiff in that ADA case won his criminal case. But are you familiar with that case? I read it briefly, I think, in preparing for coming up for this week. I only have nine seconds left. What about Paragraph 15? I'm sorry, go ahead. Nor can deaf individuals, including plaintiff, communicate effectively by reading a person's lips. That's not even a fact in this case. There's no facts pled that there was any lip-reading going on. That Paragraph 15 was where they just provide generic information about American Sign Language and different ways of communicating for sign language. Paragraph 15 was not even a specific fact. I know I'm over my time limit. But that wasn't a specific allegation in this case. It was just a generic conclusory statement that was added. And for those reasons, I'll be happy to answer, if I can have some more time, any questions. Well, he says in Paragraph 35, all this left him isolated, uninformed, causing him extreme confusion, stress, frustration, and psychological damage. Again, that's just a conclusory statement. It does not provide... All of those other cases revolve around somebody who was isolated or confused for three or four days or sat there and didn't even realize that their case got dismissed. They weren't participating in any form of that. He's not challenging his investigation, his arrest, any form of the magistration or any of the underlying plea or sentencing or anything. You are saying there has to be a bad outcome at the trial, in the trial hypothetical. If the trial goes well for the defendant and he wins, okay, so what? There was no interpreter. Who cares? No, there was a case out there where the individual did not participate at all, and ultimately the case was dismissed. He had no idea that the case was dismissed. The hearing or proceeding was over with, and then he found out either later that day or the next day by his lawyer that his case had been dismissed, although he was there and present. Why isn't paragraph 16 enough? It just says he requires an ASL interpreter to effectively communicate. Isn't the necessary application of that sentence the lack of an ASL interpreter means he cannot effectively communicate? And he has to show that he is denied a benefit or service or program or activity and he was excluded from it. And he has not alleged any facts past the fact that I didn't have an ASL interpreter. There are many forms of examples of individuals who ask for ADA accommodation and they don't get the specific accommodation that they request, but they still haven't been denied any benefit, service, or program or activity. He just hasn't pled what any of those things are. He's just made these very broad statements that I didn't have an ASL interpreter. That alone is not enough, and that's exactly what Judge Yackel mentioned. What's the best case that says when a disabled person isn't provided an accommodation but there's really no harm, no tangible harm, meaning there's no claim in your view? What's the best case for that authority? I think when you look at the three cases, actually, that the plaintiff cites, and they're all different because they all... But I'm asking, what's a case that says you lose to the plaintiff that supports you? There's none that we can find that are cited that says that you win or you lose, that you haven't met that standard under the Georgia test of the 1, 2, and 3. There is no case that says just by saying it means you get it. Just to be clear on the record, the Justice of the Peace and the judge who actually set up the case, they don't have any money or any power to provide an interpreter, do they? No. That would be the county? Correct. Okay. May it please the court. Landon Wade on behalf of the state of Texas, Lee County CSCD, and San Jacinto County CSCD. I'm going to use my time to address the sovereign immunity issue, but first, I'd like to say we do agree with Lee County that Luke has essentially... that he has failed the state of claim under Title II because he hasn't alleged he was excluded from participating Do you agree with Lee County that it has sovereign immunity? That's not an issue that I... that I am informed to speak on, Your Honor. But I wanted to go to your question, Judge Costa, briefly about what is a case that says Mr. Luke loses. And I think if the court looks at the... in its prior opinion in Valentine v. Collier, it clearly outlines what... the steps in the analysis for determining what is an ADA violation. You show qualified... you have to show, of course, you're a qualified individual that you were excluded from participating in or denied the benefits of a service, program, or activity of a public entity, and such exclusion or denial was by reason of disability. And it explains that you can, under a failure to accommodate theory, you can meet the third prong of that test, the by reason of disability prong, by showing that there was a failure to accommodate. And so it doesn't relieve the plaintiff from having to meet the second prong of that test, actually showing that there was some exclusion or some denial of a benefit. But even if Luke did state a claim under Title II, his claims against the CSCD defendants are still barred by sovereign immunity. And we believe that the court can resolve this issue without sending it back, because the record is clear that the CSCD defendants are entitled to sovereign immunity and that Luke has failed to state a claim. Can we go back to the pleading issue? Yes. So based on my understanding of the complaint, he specifically states or pleads that he needs an interpreter to effectively communicate. He specifically pleads that he was not provided one at any point in any of these various stages of the process and that as a result, he was badly harmed. So what is missing? Well, in our case, as far as the CSCD defendants are concerned, so the benefit... There's a distinction between the benefit in this case and the accommodation that is necessary to achieve that benefit. As far as probation is concerned, the benefit in that case would be the opportunity to have his criminal charges dismissed. He was placed on deferred adjudication where if he'd successfully completed probation, he would have his charges against him dismissed, and he did. But that puts him at jeopardy. I mean, he's not challenging the charges, but the fact that you're essentially convicted and are subject to imprisonment if you fail to meet the conditions of your probation, that's a significant incursion on your liberty interest, isn't it? Liberty right. I would disagree, Your Honour, just because in this case there was no threat to ever revoke his probation. He was never subject to... What were the conditions of his probation? The conditions of his probation, there were a number of conditions... That restrict liberties. Excuse me? That restrict liberties, right? Yes. OK. But at bottom he hasn't shown... Again, he alleges that... He doesn't allege that he was denied any sort of... That he was excluded from participating in his probation services, that he was denied the benefit of probation services, and that is just the missing link that he has failed to show. So is your point that he alleges that he was denied an interpreter, but that notwithstanding that deprivation he was able to fully participate and had no problems? That's what the record suggests. And just because he requested an interpreter doesn't mean that he was denied... But what do you make of his allegation that he feels isolated, he was deterred, I mean, there's a lot of allegation of injury here. So it just seems to me that you're ignoring that part or you're at least not giving that part any sort of credit. Well... Which we have to at this stage, right? At this stage, you have to take... Yes, the court would have to take the allegations as true. Right. But just because he was confused, because he was inconvenienced, that doesn't mean that he has met the pleading standard of showing... Take the trial example. I just don't... Here he successfully completes probation, so you're saying he hasn't shown the denial of a service or benefit or anything. How is it different at a trial with no interpreter where there's an acquittal? No harm, no foul. Would you say there's no ADA claim there? I would have to look at the pleadings in that case, but I would say that there is a difference in... There are certain, of course, rights that criminal defendants have, such as a right to access to counsel, a right to not be self-incriminated, Fifth and Sixth Amendment rights, that you would have in those proceedings. This was a criminal proceeding? This... Well... This wasn't a criminal trial in terms of the allegations. It was a criminal proceeding. But in terms of the allegations against, again, the CSCD defendants, the probation department, all of that is happening outside the context of a courtroom. And so, again, even if he had... Even if Luke had stated a claimant under Title II, our position is that the CSCD defendants are entitled to sovereign immunity because this case... We're talking about the pleading part. Okay. There's an understanding that sovereign immunity is something that, if necessary, can be addressed on remand. Paragraph 35. Defendants' continued failure and refusal to provide effective communication throughout the investigation, arrest, booking, detainment, arraignment, release, court proceedings, and probation have left him isolated and uninformed, causing him extreme confusion, stress, frustration, and psychological damage. We accept that as true for purposes of this proceeding, as you've just acknowledged. What's missing from this case? What's missing from this case... Despite that paragraph? ...is that he does not allege any sort of benefit that he was denied. He doesn't allege that he was excluded from participating. He does want the benefit of an interpreter so he can understand the charges against him. And, yes, that's what he alleges, and again, you're right. Isn't that a benefit? Are people entitled to effective communication with their government during these proceedings? Entitled to effective communication? Yes. Or is your position that is not a benefit, that you are not entitled to communicate during investigation, arrest, booking, detainment, arraignment, release, court proceedings, and probation? You have no right to communicate during that time. I would agree you have a right to communicate. Okay, so the benefit's in there, then. I really don't understand your argument. My argument is that for a plaintiff to state a Title II claim, there has to be, again, you have to show what were you... It's not enough to say that I was confused during the process. You have to state what were you excluded from participating in, what were you denied the benefit of, and that's the missing link in this case. He was denied the benefit of effective communication during investigation, arrest, booking, detainment, arraignment, release, court proceedings, and probation. That's what he alleges. So either that's a benefit or it's not a benefit. That would not be a benefit. Okay, so the position of the state of Texas is that citizens of this state are not entitled to effective communication during investigation, arrest, booking, detainment, arraignment, release, court proceedings, or probation. That is astounding. No, that would not be our position. Okay, thank you. The position is that, I mean, again, Luke has not... There has to be... What he is missing is that second prong. He has said that he wasn't reasonably accommodated, that the accommodation that he wanted was to have an interpreter to be able to communicate. You're saying an interpreter wasn't necessary because he had a family member to provide it. Is that sort of your idea? That's correct. Okay. And that's fine. We can have that discussion. But this is an allegation that the absence of... That, A, that wasn't effective, and, B, that as a result he had confusion, stress, et cetera. So why is that not a fact issue that you should win at trial? Why is that a motion to dismiss issue? I noticed that I'm out of time. May I respond? Thank you. It's not a fact issue because those are just... Those are conclusory allegations that they're not entitled to the presumption of truth. The record is clear. What would not be conclusory? What would be a pleading? Let's imagine the extreme fact pattern that somebody is completely deprived of communication because of a failure to accommodate disability. What does that meritorious claim... I assume we'd all agree that would be meritorious. What does that person need to plead to get into court? Hypothetically, and I'm just thinking on my feet here... Yeah, I'm not talking about this case. No, but it's up to you. You're saying this is insufficiently pled. We're not nullifying the ADA here. You have to have a theory. You have to have a theory of how a meritorious ADA claim gets into court. Otherwise, we're getting rid of the ADA. In this context, as far as probation is concerned, it would be a much different case and a much different analysis. Let's say if Luke... Let's say if somebody was required for a family member to interpret for them. They were unable to understand what they had to do to complete the terms of their probation. The probation officer then told the court, you know, this person hasn't complied with their probation, and they ask the court to revoke that person's probation. And the probationer says, well, I didn't understand what I had to do because I couldn't effectively communicate. And then their probation is revoked, and they end up going to jail because they didn't know what they were supposed to do to avoid that. Now, that would implicate due process concerns, of course. In some of the cases that Mr. Luke cites, they deal with that situation. It sounds like you're contingent on having suffered some inappropriate result in the proceeding, and you use the word due process. But this is ADA. I mean, aren't you entitled to access regardless of what the outcome is? Let's say a proceeding is completely racially discriminatory, but it just happens that the minority won and was acquitted. No violation? I'm not sure about that, Your Honor. Thank you. And I'll just ask that the court affirm the district court's dismissal of plaintiffs. Thank you. On rebuttal, I just want to clarify some things that the appellees have stated that are not supported by the record. If we go to the appellant record 66, one of the statements that were made, quote, plaintiff made no pleading that they were excluded from participation or had denied any benefits. However, if you look at paragraph 59 of the appellate record, sorry, 66 of the appellate record, it states, Defendants discriminate against Mr. Luke on the basis of disability by excluding him from participation and denying him the benefits of their services and subjecting him to discrimination in violation of the ADA. And then in 60, it says, Defendants further discriminated against Mr. Luke by failing to ensure effective communication through the provision of a qualified in-person interpreter. And in 61, Defendants' failure to provide effective communication to Mr. Luke denied him the same access to defendant services, benefits, activities, programs, or privileges as the access provided to hearing individuals. And it goes on and on. And so when the appellees are stating over and over again, there's no pleadings. We didn't plead it enough. If you reference the case, the three cases that were cited in the briefs, Delano v. Powell and the others, you will see that this complaint is vastly more detailed than those complaints that were filed in court. There were no issues with stating a claim in those cases, and many of them went to trial and prevailed. And so in terms of saying that we did not plead enough in this case, I think, based on the interactions, it clearly shows that the benefits are the denial of your due process rights to understand and to be able to equally participate, just like everybody else in these proceedings. The jury, the fact finder, can understand what are the types of things that go on through these processes, what are the benefits, what rights you are to be informed of throughout the process, and they can decide whether that person was denied on the basis of the absence of auxiliary aids or not. And we believe that we've pled a sufficient claim for purposes of the ADA here. And so it's... That is the core of our argument, and that is what we want this court to remand, to say that this does plead a plausible claim and that it should proceed for further proceedings. What are the paragraphs of your complaint that you think sufficiently plead? I'm assuming 35 is... 35? One of them that... I didn't want to... Yes, Your Honor. I didn't want to repeat the ones that you've already mentioned. But what other... Are there other paragraphs we should be looking at? Sure, sure. If you look at 31, throughout the whole process, Mr. Luke and his family... And this is on Appellant Record 62. Defends have repeatedly refused to provide ASL interpreters for Mr. Luke and have failed to explain his legal rights, the terms and conditions of his status in ASL, which is his primary language. Throughout the whole process, Mr. Luke had to sign numerous legal documents with the aid of ASL interpreter services. And... And we're going to keep going here. If you look at Allegation 27 and 28... 25, 24... It actually goes and states facts regarding his arrest, his booking, his arraignments, his trial, his probation. So there are specific allegations here. And to the extent that the appellees are trying to import some standard that someone who is deaf has to sufficiently articulate what it is he would have wanted to hear or understand with an ASL interpreter for proceedings he could not hear would result to an absurd result, just like asking a blind person who was given written materials what is it that they wanted to read when they couldn't read it. And so I think that for the 12B6 claim here, this more than sufficiently alleges a claim of ADA Title II and that the court should be... this court should remand for further proceedings. Thank you. Thank you, counsel. That will conclude the arguments for this morning. The court will be in recess until 9 o'clock in the morning.